904 F.2d 699
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
BOLTON CORPORATION; Industrial Maintenance Overflow
Company, Plaintiffs-Appellants,
v.
THE UNITED PACIFIC INSURANCE COMPANY; Noonan South, Inc.,
formerly Noonan-Kellos, Inc.; the Noonan Group,
Inc.; R.S. Noonan, Inc., Defendants-Appellees.
 No. 89-1773.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 9, 1990.
Decided: May 25, 1990.
Rehearing and Rehearing In Banc Denied June 21, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, Chief District Judge. (88-210-CIV-5).
 Joseph Charles Kovars, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Md., argued for appellants; Louis J. Kozlakowski, BLUM, YUMKAS, MAILMAN, GUTMAN & DENICK, P.A., Baltimore, Md., on brief
 Charles Roberson Holton, MOORE & VAN ALLEN, Durham, N.C., for appellees; E.K. Powe, David E. Fox, Moore & Van Allen, Durham, N.C., on brief.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Bolton Corporation, a heating and air conditioning contractor, appeals the district court's grant of summary judgment in favor of United Pacific Insurance Company. Bolton sought to impose liability upon United Pacific pursuant to a performance bond in which United Pacific, as surety, guaranteed to the State of North Carolina the performance of a contractor whose substantial delays in completing a construction project caused consequential damages to appellant Bolton. The district court held that Bolton failed to establish any basis for liability by United Pacific. We affirm.
 
 I.
 
 2
 On October 12, 1982, the State of North Carolina, through Western Carolina University, awarded multiple prime contracts for the construction of an activity center on the university campus in Cullowhee, North Carolina. For such projects, North Carolina law requires that the state contracting authority award multiple prime contracts directly to the various specialty trade sub-contractors, as opposed to the general practice of entering into one "prime" contract with a general contractor who, in turn, hires the necessary sub-contractors. N.C.Gen.Stat. Sec. 143-128.
 
 
 3
 Pursuant to this statute, the State awarded a contract for heating and air conditioning work to appellant Bolton Corporation; another, for plumbing work, to Industrial Maintenance Overflow Company ("IMOCO"); and a third, for general construction, to Noonan-Kellos, Inc. Noonan-Kellos' contract required it to be the project expeditor, which involved project scheduling, coordinating the work of the other contractors, and expediting the project for timely performance and completion.
 
 
 4
 On that same date, appellee United Pacific Insurance Company provided a statutory performance bond in favor of the contracting body, the State of North Carolina, pursuant to the provisions of Article 3 of Chapter 44A of the North Carolina General Statutes. N.C.Gen.Stat. Secs. 44A-25 et seq. United Pacific, as surety, guaranteed to the State the faithful performance of the principal contractor and project expeditor, Noonan-Kellos.
 
 
 5
 The construction of the activity center suffered from substantial delays, admittedly the fault of Noonan-Kellos, resulting in consequential damages to many contractors, including Bolton Corporation and IMOCO. On October 16, 1984, after the university had threatened to declare Noonan-Kellos in default, university officials, Bolton's representatives, and other interested parties met with United Pacific's delegate, Vincent Fasano, to formulate a plan for completion of the project. During the discussion, Fasano declared that his sole purpose in attending the meeting was to obtain information so that his client, United Pacific, could make an informed decision about its responsibilities.
 
 
 6
 On November 2, 1984, the state, Noonan-Kellos, R.S. Noonan, Inc., and United Pacific executed an agreement which provided that R.S. Noonan, Inc., an affiliate of Noonan-Kellos, would assume management of the completion of the project. Bolton and IMOCO completed their work in April 1986, and the entire project was completed sometime after May 1987.
 
 
 7
 Bolton and IMOCO filed an action against United Pacific seeking to recover the damages suffered as a result of the delays under three theories of liability: (1) that United Pacific expressly or constructively took over the contract from Noonan-Kellos, in effect substituting itself as the contractor; (2) that Bolton and IMOCO were third-party beneficiaries of United Pacific's surety bond; and (3) proceeding under a theory of promissory estoppel, that United Pacific's actions during and after the October 16, 1984, meeting amounted to a promise on which Bolton and IMOCO could and did rely.
 
 
 8
 United Pacific moved for summary judgment, and Magistrate Denson of the Eastern District of North Carolina, finding that Bolton and IMOCO failed to establish a basis for liability under any of the three theories advanced in their complaint, filed a memorandum and recommendation in support of United Pacific's motion. Bolton and IMOCO filed objections to the magistrate's findings. After overruling the objections, the district judge adopted the recommendation of the magistrate and granted summary judgment. Bolton appeals.
 
 II.
 
 9
 Bolton contends on appeal, as it did before the district court, that it and IMOCO are third-party beneficiaries of the performance bond issued by United Pacific and that, as such, United Pacific became liable to them for the delays caused by Noonan-Kellos. We agree with the district court, however, that N.C.Gen.Stat. Sec. 44A-26(a)(1) clearly states that such performance bonds "shall be solely for the protection of the contracting body which awarded the contract." In the instant case, the State of North Carolina awarded the contract to Noonan-Kellos for which United Pacific served as surety. As the district court reasoned, if the performance bond was indeed for the benefit only of the State as the contracting body, it could not also have been for the benefit of Bolton and IMOCO as third-party beneficiaries.
 
 
 10
 The North Carolina Court of Appeals also rejected Bolton's third-party beneficiary theory in the recent case of Bolton Corp. v. North Carolina, 95 N.C.App. 596, 383 S.E.2d 671 (1989). In that case, Bolton brought a breach of contract action against the State of North Carolina alleging that certain acts of the State prevented timely performance of its contract to perform the heating and air conditioning work on a major construction project. Bolton contended that it was a third-party beneficiary of certain contract provisions between the general contractor on the project and the State which related to changes in work orders. Bolton argued that the general contractor's contract could not be modified by the State without notifying and compensating Bolton. The court rejected this argument as meritless:
 
 
 11
 "It is well settled in North Carolina that where a contract between two parties is entered into for the benefit of a third party, the latter may maintain an action for its breach or in tort if he has been injured as a result of its negligent performance." However, a mere incidental beneficiary to a contract acquires no right against the promisor or the promisee. "Whether a contract was intended for the benefit of a third party is generally regarded as one of construction of the contract. The intention of the parties is determined by the provisions of the contract construed in light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish."
 
 
 12
 In support of their argument plaintiffs point to specific contract provisions imposing liability on each prime contractor to each other for delays and damages to their work and to G.S. 143-128 which holds contractors liable to the State and other contractors for full performance of their work under their contracts. While it is clear that this language imposes a duty on contractors to cooperate with each other in the full performance of their contracts, we do not think it indicates, as plaintiffs contend, that the State's contract with [the general contractor] was entered into with the intention or purpose of benefiting [Bolton].
 
 
 13
 N.C.App. at ----, 383 S.E.2d at 673-74 (citations omitted). In light of this recent decision by the North Carolina Court of Appeals and the explicit language of N.C.Gen.Stat. Sec. 44A-26(a)(1), we agree with the district court that the bond created obligations solely in favor of the State as the contracting body and was not executed for the benefit of Bolton.
 
 
 14
 Bolton also argues that regardless of whether United Pacific became liable to Bolton by execution of the bond guaranteeing Noonan-Kellos' work, United Pacific nonetheless became liable by execution of the November 2, 1984, agreement and by actions which it took immediately before that date and thereafter. The agreement provided that R.S. Noonan, Inc., an affiliate of Noonan-Kellos, would assume completion of the project; however, we agree with the district court that the agreement did not increase or modify any of United Pacific's liabilities under the performance bond and thus provides no basis for liability on the part of United Pacific.
 
 
 15
 Bolton, renewing its argument that United Pacific is liable upon an estoppel theory, though not denoted as such, contends that at the October 14, 1984, meeting, United Pacific's agent, Vincent Fasano, made representations on which Bolton relied that United Pacific was assuming liability for the delays caused by Noonan-Kellos. We hold that the district court properly rejected this theory of liability. Bolton failed to allege any conduct by United Pacific which could have given rise to its belief that United Pacific would assume any liability on the part of Noonan-Kellos to Bolton for the delays.
 
 
 16
 Bolton also contends that United Pacific took over the contract from Noonan-Kellos and, in essence, "stepped into the shoes" of Noonan-Kellos, thus assuming Noonan's liability to the co-primes for project delays. The district court determined that United Pacific might have acted as contractor as early as January 1987, but that Bolton and IMOCO completed their work on the project in April 1986. Accordingly, reasoned the district court, anything that occurred eight months or more after these contractors completed their work could not have delayed or otherwise affected them. We agree with the district court that Bolton has failed to allege any evidence that United Pacific took over the contract before Bolton completed its work on the project in April 1986.
 
 
 17
 The performance bond executed by United Pacific was unambiguous and created obligations only in favor of the State of North Carolina as the contracting body. Furthermore, the November 2, 1984, agreement did not extend or increase United Pacific's obligations to include Bolton, nor did United Pacific take any steps to complete the project until at least eight months after Bolton had completed its work. Accordingly, the district court's order granting the defendant's motion for summary judgment is
 
 
 18
 AFFIRMED.